MAGUIRE et al., Appellants, v. DONOVAN et al., Respondents.

St. Louis Court of Appeals, December 13, 1904.

1. **NEGOTIABLE PAPER: Payment to Agent: Trustee in Deed of Trust.** The trustee in a deed of trust, with power of sale, given to secure the payment of a promissory note, is not the agent of the owner of the note to collect the note, the conditions of the deed of trust being unbroken.

2. ———: **Payment: Demand for Note.** Payment of a note to extinguish it should be made either to the holder and owner or to some one authorized by him to receive it and demand should be made for the note, otherwise such payment is made at the risk of the party paying it.

3. ———: **Payment to Agent.** Where the makers of a promissory note continued to make payments to the first assignee after the transfer of the note in ignorance of the fact that it had been negotiated, and the owner of the note was ignorant of the fact that the original assignee held himself out as his agent, the evidence in an action to cancel a deed of trust securing the note, is examined and held that the makers and not the owner of the note should suffer the loss by reason of such payments.

Appeal from St. Louis City Circuit Court.—*Hon. Horatio D. Wood,* Judge.

AFFIRMED.

*James J. O'Donohoe* for· appellants.

(1)   Donovan was at all times the agent of the owner of the note, and to permit said owner to deny Donovan's authority to collect said note would be to perpetrate a fraud on the plaintiffs.   Gibson v. Zeibig, 24 Mo. App. 65; Ferneau v. Whitford, 39 Mo. App. 312; Sharp v. Knox, 48 Mo. App. 169; Bonner v. Lisenby, 86 Mo. App. 666; Bank v. Life Ins. Co., 145 Mo. 127, 46 S. W. 615.   (2)   Donovan was the trustee in the deed of trust, and, as such trustee, he was the agent of the owner of the note, and payment of the note to Donovan constituted payment to the owner.   Whelan v. O'Reilly, 61 Mo. 565.   (3)   Plaintiffs in paying the note to Donovan, trustee, acted in good faith and they are not responsible to the owner of said note for its proper application.   R. S. 1899, sec. 4588, p. 1094; Schanewerk v. Hoberecht, 117 Mo. 22, 22 S. W. 949. (4)   Donovan was practically the payee of the principal note and first series of interest notes, and the J. T. Donovan Real Estate Co. was actually the payee of the different series of interest notes except the first. And as payee he was the agent of the owner for the collection of said notes.   "The payee of a note, which has been transferred without notice to the maker before collection becomes the agent of the holder for such collection."   (Plaintiffs had no notice of the transfer of the note in this case.)   1 Current Law, p. 45 (cases cited); Safety Vault Co. v. Carr (Ky. App.), 66 S. W. 990.

*Charles E. L. Thomas* for respondent.

(1)   The burden is on the maker of the note to ascertain who is the proper payee and a debtor paying one not in possession of the note or evidence of the debt assumes the risk of the authority of the payee to collect the money.   Wooding v. Bradley, 76 Va. 614. And so even in the case of a duly authorized agent,

whose authority and agency are unquestioned (certainly not the case at bar) the authorities go still further and say: "Where the agent has possession of a promissory note it may be inferred that he has authority to receive payment of it, but the burden is on the debtor, who makes payment to show that the promissory note was in his possession when payment was made." Stiger v. Bent, 111 Ill. 328; Williams v. Walker, 2 Sandf. Ch. (N. Y.) 325; Haines v. Pohlmann, 25 N. Y. Eq. 179; Smith v. Kidd, 68 N. Y. 130; Adams v. Humphreys, 54 Ga. 496; Doubleday v. Kress, 60 Barb. (N. Y.) 181; Jones on Mortgages (2 Ed.), 964. (2) If a person is not in actual possession of a negotiable instrument a payment to him is presumptively unauthorized. Holland v. Van Biel, 89 Ga. 223; Fortune v. Stockton, 182 Ill. 454; Draper v. Rice, 56 Iowa 114; Lumber Co. v. Littlejohn, 31 Neb. 606.

REYBURN, J.—On the fourteenth of May, 1888, appellants negotiated a loan for $2,500, through defendant, Joseph T. Donovan, a real estate agent of the city of St. Louis, and for principal and interest accruing executed, by attaching severally their mark in lieu of individual signature, a principal note for that sum maturing in five years and ten semiannual interest notes each for $75, all without place of payment named and made payable to defendant Giraldin, then employed in Donovan's office, and secured payment of such notes by deed of trust on appellant's realty in city of St. Louis, naming Donovan as trustee therein, and the notes indorsed without recourse by Giraldin, a mere accommodation payee, were delivered to Donovan, who at a time not accurate by fixed date, but in 1891, and prior to maturity of the loan, sold it to Wm. Booth & Co., real estate agents in the city of St. Louis and delivered the principal and non-accrued interest notes to that firm, which subsequently transferred the

investment to the account of defendant, Marie De La Pierre, a non-resident customer, but retained possession and control of the notes thereafter and until paid, none of the notes purchased were in Donovan's possession at any time. Anterior to their transfer, appellant, Mary Maguire, an illiterate woman, had paid the interest notes at Donovan's office, receiving them from him or his employees at his instruction, and this usage continued unchanged and unaffected by change in their ownership and at maturity, May 14, 1893, $1,400 was thus paid and credited by an indorsement on the principal note, which also incorporated a renewal of the balance of $1,100 for thirty months from that date, the interest for period of renewal being represented by five semiannual interest notes for $33 each, executed to order of J. T. Donovan Real Estate Company and by it indorsed without recourse by its president, Donovan, and delivered to Wm. Booth & Co. This appellant after this renewal continued to make all payments at Donovan's office, but after the loan was acquired by Booth, the notes when delivered by Donovan to her were marked with date of payment and words, "Paid, Wm. Booth & Co." Additional to payment of interest notes maturing, this appellant paid Donovan to May 14, 1898, $700 composed of smaller sums, an account of which, as well of interest payments, was kept in a series of entries in a book of account between the appellants and J. T. Donovan Real Estate Company for that purpose. May 14, 1896, appellant, Thomas Maguire, executed four semiannual notes for $15 each to order of J. T. Donovan Real Estate Company and again, on May 14, 1898, both appellants, Mary Maguire and her husband, executed four semiannual interest notes for $12 each, all purporting to be for interest accruing at six-month intervals on balance then unpaid on principal note, and delivered all of them to Donovan, directing him to reduce the balance of the principal by application from time to time of the $700, and being led by him to be-

lieve such application had been made.  Mrs. Maguire testified she was not aware of the transfer of the loan to Booth and was kept in ignorance of it by Donovan, so continued to make payments to the office of the latter, but, being unable to read or write, she could not swear that the notes were in Donovan's office after their transfer, or that the indorsement acknowledging partial payment of $1,400 and extending balance was made there.  On the other hand, the bookkeeper of Booth & Co. deposed that such indorsement was in his handwriting and made in their office, and Papin of the same firm testified, that when the interest notes were about to fall due, they would send notice of approaching maturity to appellants, in care of Donovan, and a like notice addressed to them through the general delivery department of the postoffice, and in response to such notification, Donovan, or some one in his employ, would take up the due note at office of Booth & Co.  This practice was adhered to after the principal note fell due and the interest notes received by Booth & Co. had been thus taken up till in 1901, appellants discovered that Donovan had long prior parted with possession and ownership of the notes and thereafter, until May, 1902, the appellants dealt directly with Booth & Co., making final payment May 13, 1902, of $33, as six month's interest accrued on the principal sum of $1,100, and receiving a receipt to that effect from the bookkeeper of the firm of same tenor as former receipts for payment of semiannual interest and on payment of one or two sums of $25 on account of the principal while dealing with Booth & Co., direct.  After the last payment of interest, May 13, 1902, appellants made tender of $46 balance asserted to be remaining unpaid, and demanded the note and cancellation of the deed of trust, and followed such tender and demand by this suit, averring payment in full of the indebtedness, principal and interest, to Donovan, as agent of defendant, Marie De La Pierre, excepting amount of $46, willingness to pay

which was averred, and praying that satisfaction of the deed of trust be decreed. Until action brought, Booth & Co. were ignorant of any payments made by appellant to be applied on the principal note, except the sum of $1,400 repeatedly mentioned, and the small sums of $25 received by them. After sale of the loan, Donovan, as mentioned, caused new interest notes from time to time to be made and delivered to him by appellants after receiving the various partial payments, the amounts of such notes being based on the proportionately abated principal sum. These notes were never seen nor known of by Booth & Co. until suit and no authority was disclosed conferring any authority on Donovan by Booth & Co., as agents of Marie De La Pierre, whatever, either to receive payments of principal or interest or to make or receive new interest notes or otherwise.

It was conceded by respondents that the residence address and name of Thomas Maguire appeared in the city directory for the city of St. Louis for the years of 1896 to 1901 both inclusive, but in such directories the same name, with and without varying middle initial letter, was repeated several times with different addresses, and Donovan had obstructed efforts of Booth & Co. to locate the makers of the notes, asserting he represented them.

From the foregoing history of the transactions narrated in the testimony in this action, it is plain that appellants, doubtless industrious people, in their ignorance of business methods and reposing confidence in. Donovan, have been shamefully defrauded by him probably of their frugal savings in their efforts to reduce and pay their mortgage indebtedness, but it is equally manifest that the consequent loss can not be legally shifted upon the innocent holder and purchaser in good faith of the note evidencing such mortgage debt. In making payments to Donovan, without requiring him to produce the principal note, and without having such payments indorsed thereon, as was done when the first

partial payment was made, appellant, Mary Maguire, in contemplation of law, is presumed to have acted at her own peril and assumed the risk incident to such method of dealing and, as Donovan had no authority whatever from the owner of the paper, such payments did not operate to liquidate the note in her hands. If the maker of negotiable paper transferred in usual course of business makes payment to any person other than the true owner, he must be prepared to prove that the person receiving payment was the actual or ostensible agent of the real holder of the paper. White v. Kehlor, 85 Mo. App. 557; Sharp v. Knox, 48 Mo. App. 168; Ferneau v. Whitford, 39 Mo. App. 311. Nor did the fact that Donovan was trustee named in the power of sale incorporated in the mortgage confer any right to receive payment of the note in absence of authority to be inferred from its possession; his powers as such trustee were clearly defined by the instrument and embraced no such authority. Fortune v. Stockton, 168 Ill. 454. Payment of a note to extinguish it should be made either to the holder and owner, or to some one authorized by him to receive it, and upon payment demand for the note should be made, otherwise such payment is made at risk of the party paying it, and if the party receiving payment had no right or authority, the payment is no discharge as against the true holder. Eaton & Gilbert, Commercial Paper, p. 534b; Edwards, Bills & Notes, p. 537.

The fraud practiced on appellants was made possible by appellants' unfortunate negligence and carelessness in making payments to Donovan, the precaution usual in such transactions of demanding the exhibition by him of the note and proper immediate indorsements being omitted and they must suffer the loss as against the true holder, for the hazard they thus assume however innocently and ignorantly their actions may have been.

The judgment is affirmed. All concur.