69 760
d95 536
69 760
f109 110

## SAX v. DRAKE ET AL.

1. **Practice on Appeal:** ARGUMENT: IMPROPER REMARK. Appellant's counsel, in opening their argument in this court, stated: "In the first place, it is proper to state that J. B. Sax (plaintiff) and Charles Sax are the sharpest clothing dealers among the Jewish merchants of Ottumwa." *Held* that the remark was highly improper, as justifying the inference that the counsel supposed that the members of this court might have a prejudice against Jews, by which they might be influenced; and for the implied disrespect for the court the argument might properly be stricken from the files.

2. **Promissory Note:** PAYMENT TO AGENT: AUTHORITY. B., a loan broker, negotiated a loan from S. to D., but the note given by D. as

Sax v. Drake et al.

evidence of the debt was made payable to B., or bearer, and was delivered to him. B. delivered the note to S., but D. paid the interest for many years to B., and took his receipt for the same, and S. received the interest from B. D., relying on B.'s agency, as established by their former dealing, and having no reason to suspect any change, paid the principal of the note to B. *Held* that S. was bound by the payment.

*Appeal from Wapello Circuit Court.*

THURSDAY, JUNE 10, 1886.

ACTION upon a promissory note and mortgage. The defendants pleaded payment. There was a decree for the plaintiff. The defendants appeal.

*Williams, Jaques & Adler,* for appellants.

*H. B. Hendershott* and *Sloan, Work & Brown* for appellee.

ADAMS, CH. J.—The note was made payable to J. O. Briscoe or bearer, and was delivered to him, and by him to the plaintiff. The amount due thereon was afterwards paid to Briscoe, whom the maker, Drake, supposed was still the holder. Drake avers, however, that the payment to Briscoe was good, notwithstanding the fact that he had transferred the note by delivery to the plaintiff, because Briscoe had been, and was at the time of the payment, the agent of the plaintiff, duly authorized to receive the payment in question. The plaintiff denies such agency, and the question as to whether Briscoe was the agent of the plaintiff, authorized to receive payment, is the question in the case.

Before proceeding to determine it, it seems proper to advert to an objectionable remark made by the appellant's

1. PRACTICE on appeal: argument: improper remark.

counsel in the opening part of their argument. The counsel say: "In the first place, it is proper to state that J. B. Sax and Charles Sax are the sharpest clothing dealers among the Jewish merchants of Ottumwa,

Iowa." We take issue with the counsel. It was not only not proper to so state, but it was highly improper. The counsel do not, of course, claim that in this court one rule of law is to be applied in determining the rights of Jews, and a different one in determining other persons' rights. But the remark justifies the inference that the counsel supposed that the members of this court were not Jews, and possibly had a prejudice against them; and possibly, if they had, were not above being influenced by such prejudice. We would proba- bly be justified in striking the whole argument from the files as containing a remark disrespectful to the court; but we think best merely to say that the remark meets with our disapprobation.

Coming now to the merits of the case, we have to say that it appears to us that Briscoe was authorized to act for the plaintiff in the receipt of the payment. We have each of us reached this conclusion upon a separate reading of the evidence. The note in question was given for borrowed money, and it is undisputed that the money borrowed was advanced by the plaintiff. Briscoe was an intermediate person, acting for both Sax and Drake. It is true, the plaintiff testified that he bought the note of Briscoe. But Briscoe testified that he did not sell the note to the plaintiff; that he never had any interest in it, and that the plaintiff knew it; and the plaintiff testified that he understood Briscoe was acting as a loan broker. We think that a key to the whole transaction is found in the testimony of Briscoe, to the effect that the plaintiff desired to conduct the business in such way that his name would not appear upon the records of mortgages. Briscoe furnished the bor- rower, and had the note made payable to himself or bearer, with no understanding that the note was to be put in force until the plaintiff had furnished the sole consideration for which the note was given. We can see no satisfactory rea- son why the loan broker should insert his name as payee in the note, except to aid the plans of the lender, as he testified.

*2. PROMIS-SORY note: payment to agent: authority.*

In this connection it should be stated that the plaintiff held the note for years without giving the maker any occasion to mistrust that he held it. As the interest became due from year to year, the maker paid it to Briscoe, and took Briscoe's receipt, and the plaintiff received the interest from Briscoe. The plaintiff knew perfectly well that the maker supposed that a payment of the interest to Briscoe was good, and that he might proceed to pay to him the principal when due, unless he was notified to the contrary, which was not done. We have not a doubt that the plaintiff intended to collect the whole note through Briscoe.

The evidence is not very explicit as to an express authorization; but the mode in which the plaintiff and Briscoe did business, shows, we think, what the understanding was. We think that the payment to Briscoe was a good payment.

REVERSED.